IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

ANDRE BOYER                                              :      NO.
                          Plaintiff                      :
            vs                                           :      CIVIL ACTION
                                                         :
CITY OF PHILADELPHIA;                                    :
CHARLES RAMSEY, AND FIVE JANE & JOHN DOES :
                          Defendants                     :      JURY TRIAL DEMAND


COMPLAINT


I.      Introduction

        1.      Plaintiff brings this civil action for relief under 42 USC 1983, et seq. inclusive of

section 1988, for an intentional deprivation under color of law of federally secured rights, as

secured by the First and Fourteenth Amendment (free speech, petition clause and equal

protection). The action is further brought pursuant to 42 USC 2000(e) (Title VII) for

employment discrimination because of race and a prior opposition of employment discrimination

because of race lawsuit and EEOC / PA HRC complaint. Supplemental state claims are brought

also under the Pennsylvania Human Relations Act. 43 P.S. § 951 – 963 for employment

discriminant/retaliation, and under the Commonwealth of Pennsylvania constitution, Article I

sections 1 (inherent rights), 7 (free speech), 20 (right to petition) and 26 (no discrimination) for

the deprivation of state constitutional rights by the defendants.


II.     Jurisdiction

        2.      This court is provided jurisdiction to hear the matter pursuant to 42 USC 1983, 42

USC 2000e (Title VII) and 20 USC 1331 and 1343. The Court has supplemental jurisdiction to

hear the ancillary state claims pursuant to 28 USC 1367. Venue is properly in this court because

the events that give rise to the causes of action as pled have occurred in Philadelphia County, Pennsylvania, which location is within the venue for the court.

III.     Parties

3.       Plaintiff is Andre Boyer who resides in the County of Philadelphia, Commonwealth of Pennsylvania; he is an adult male and a member of the African-American race.

4.       Defendants are the City of Philadelphian (hereafter the City), Charles Ramsey (hereafter Ramsey), and five John Does and five Jane Does; each defendant is believed to either resides in or have a principle place of business with offices where it conducts business in Philadelphia County, Commonwealth of Pennsylvania.

IV.     Material Facts

5.       The City is a City of the First class, which is incorporated and authorized to act as a municipal authority pursuant to Commonwealth statutory law; the law allows the City to act as its own entity but through its employees and appointed and elected officials. The City is a Home Rule municipal / political subdivision entity.

6.       Defendant Ramsey is a natural person, African American, employee of the City, and he is the Police Commissioner and the chief policy and/or decision-maker for the City of Philadelphia's police department.

7.       Defendant Ramsey is the person who by delegation or appointment of power from the Mayor of Philadelphia and/or state law makes policy for the City of Philadelphia's police department; and who is the ultimate decision maker for discipline for the City of Philadelphian police department. Ramsey for all times related to the cause of action is the person and

supervisor that made the decision to terminate as discipline the Plaintiff in, on, or about July 2013.

8.      On or about May 23, 2012 the Plaintiff initiated a civil rights lawsuit in the United States District Court for the Eastern District of Pennsylvania. Plaintiff's civil action asserted race discrimination is the investigation and discipline imposed for the preparation of PARS reports; whereas, Plaintiff prepared the PARs in the manner trained and with practice and custom used by the City of Philadelphia and its police department to prepare the PAR's report.

9.      On or about but before June 28, 2012  the lawsuit was served on the City of Philadelphia and the named defendant. Service was accepted by the City's Law Department, which Department assigned counsel and which counsel appeared in the action and mounted a defense for the City and other city employee defendant.

10.     Under policy, practice and/or custom of the City, when a lawsuit is brought against a City of Philadelphia police officer, the Police Commissioner in notified of the lawsuit by and through the Law Department.

11.     Defendant Ramsey was notified of the Plaintiff's lawsuit of race discrimination, which lawsuit was against the City and an internal affairs investigator. Ramsey was aware of Plaintiff's lawsuit and basis for the lawsuit no later than September 20, 2012.

12.     The defendants in the Plaintiff's lawsuit sought to dismiss the action by motion and before answering the plaintiff's complaint. The effort was partially successful however a claim of race discrimination against the internal affairs investigator survived. The complaint was answered and the case proceeded with discovery.

13.     Following the initiation of the lawsuit, after service of it, and notification to defendant Ramsey of the plaintiff's lawsuit and its basis, the plaintiff was subjected to discipline that was approved to be imposed against the plaintiff by Charles Ramsey.

14.     Pursuant to policy, practice and custom of the City of Philadelphia, defendant Ramsey could choose to take direct action against Plaintiff; meaning discipline him then and there, or refer the matter for a hearing before the Police Board of Inquiry.

15.     Defendant Ramsey referred the disciplinary matter to the Police Board of Inquiry, which Board, Unit and Department Advocate (prosecutor) are ultimately supervised by and under the control of defendant Ramsey.

16.     Pursuant to police practice and custom of the City and its police department, defendant Ramsey is noticed of all outcome or decision by the Board of Inquiry, and Ramsey as police commissioner, choose to accept, reject or modify any Board decision.

17.     As a practice and custom, the review by the police commissioner and here Ramsey, the review of the Board decision is not made from a review of the record created at the Board of Inquiry hearing. Rather, the review is of whatever the police commissions may have been told by others, even those not testifying at the hearing, what was read which may not have been presented in the hearing, or the sole decision and penalty form that is prepared and sent to the police commissioner by the three Board members hearing the case.

18.     On or about July 27, 2013 the plaintiff appeared before the Board of Inquiry of the charge authorized by defendant Ramsey.

19.     Plaintiff before the hearing was asked to admit to conduct he did not do in exchange for keeping his employment; and if plaintiff admitted to conduct he did not do the

charge bought would be changed to a charge for the conduct the City wanted plaintiff to admit doing.

20.     Had plaintiff accepted the plea offer to pled to knowing flaw facts, which plea and testimony is discoverable by defense counsel for those plaintiff arrest, plaintiff would not have been able to act as a police officer because his testify in court could be harmed by making false statements under oath to the Board of Inquiry

21.     Plaintiff rejected the offer to admitting to conduct and/or making a statement under oath that was knowingly false. The City then prosecuted its charge and the Board found plaintiff guilty; a suspension was imposed as punishment on the Plaintiff by the Board.

22.     On or about August 1, 2013 defendant Ramsey change the suspension to a suspension with intent to terminate. Plaintiff was given notice on or about August 6, 2013 of Ramsey's intention to terminate.

23.     On or about September 2, 2013 the plaintiff's employment with the City of Philadelphia as a police officer was terminated by Ramsey, and plaintiff wages and benefits attendant to the employment stopped.

24.     Plaintiff utilized the Collective Bargaining process to grieve the termination.

25.     Plaintiff's challenge to being wrongful terminated was through the Commonwealth of Pennsylvania Act 111 arbitration law.

26.     Defendants City, Ramsey and the Does were all provide notice of the Plaintiff use of the Act 111 arbitration process.

27.     Plaintiff on or about August and again in September 2013 filed with the Equal Opportunity Commission an employment discrimination charge; the charge was duel filed with the Pennsylvania Human  Relations Commission. The charge of race discrimination asserted

retaliation for the prior opposition to race discrimination and through the lawsuit. The charge named the City of Philadelphia as the employer and Charles Ramsey as the animus supervisor and an aider and abettor to the City's policy to discriminate in employment because of race and/or retaliate against those that oppose illegal employment discrimination. The Charge was due filed with the Pennsylvania Human Relations Commission.

28.     Plaintiff's EEOC and PA HRA charge were served on the City through its Law Department and then to Charles Ramsey and then the Does.

29.     Following Plaintiff's engagement of the Act 111arbitration process and then the EEOC / PA HRA agency charge process, and following the notice to the City, Ramsey and Does of these activities by the Plaintiff, Ramsey, the City and Does denied the Plaintiff his request for the CITY, Does and Ramsey to turn over to him his vested pension property that is held by the City and Does as fiduciaries to the Plaintiff.

30.     Plaintiff has exhausted agency process and was issued a right to sue letter.

31.     This civil action is filed within 90 days of the date when the right to sue notice was received by the Plaintiff.

V.     Causes of Action

### COUNT I
### 42 USC 2000(e) Title VII
### Retaliation
### Boyer v City of Philadelphia (Employer)
### Charles Ramsey identified as an animus supervisor

32.     Plaintiff repeats all proceeding paragraphs here and as if each were repeated verbatim.

33.     Plaintiff engaged in activities protected by Title VII and the Pennsylvania Human Relations Act]. Plaintiff opposed race discrimination in employment. Plaintiff did so by initiated

a lawsuit against the City of Philadelphia and one of its employees, which lawsuit alleged race discrimination.

34.     Plaintiff was subjected to a materially adverse action. The adverse action is because of plaintiff's protected activities which are: (a) to grieve in court by a lawsuit the race discrimination grievance plaintiff had with the City and its employees; (b) speak out in court and court filings to oppose employment race discrimination; (c) file under state law and use state process provided by Act 111 arbitration for review of a wrongful termination; (d) file charges of retaliation with the Equal Employment Opportunity Commission and Pennsylvania Human Relations Commission.

35.     Following near immediate and or causationally related in close time or by a pattern of acts of antagonism, after the protected activities aforementioned, the City employer and/or animus supervisor increased disciplinary punishment, suspended without pay and terminated the Plaintiff, and then denied the plaintiff of his pension property.

36.     The City employer relied solely on the acts of animus supervisors, such as Ramsey but not limited to him, to terminate the plaintiff and without proving valid or meaningful procedural and substantive due process they then withheld from the Plaintiff his pension wage property.

37.     Defendant's Ramsey's and the Does action to withhold the Plaintiff's vested pension money was without any notice to the Plaintiff the property would be denied to the Plaintiff and held by the defendants.

38.     The Defendants' actions denied the opportunity to transfer to a Highway Uit; the decision to terminate the Plaintiff, suspend without pay and terminate the Plaintiff, and to withhold pension property was intentional, reckless, willful, malicious, and shocking to the

conscious conduct; it was ill will and depraved heart conduct intended to harm the plaintiff, deny property, and deny rights that are secured by law.

39.    The City employer did not conduct an independent or reasonable, prompt or appropriate investigation to support to its decision to terminate plaintiff and/or withheld pension money belonging to the Plaintiff.

40.    The City employer did not conduct an independent or reasonable, prompt or appropriate investigation to support to its decision to terminate plaintiff and/or withhold pension money belonging to the Plaintiff; rather, the City employer relied exclusively on the animus supervisor Ramsey and others to terminate the plaintiff and withhold the Plaintiff's pension property.

41.    Defendant Ramsey did not conduct an independent or reasonable investigation before terminating the plaintiff.

42.    A member of the Board of Inquiry head member, a Captain, held animus towards the plaintiff for his race and/or opposition to race discrimination in the employment.

43.    There is a causal connection between the plaintiff's opposition to illegal employment discrimination and the adverse employment action, viz, discipline, plea offer to make a false statement, termination, and withhold pension property.

44.    As a direct result of the Plaintiff's termination, the retaliation or discrimination, and withhold of pension money, the plaintiff suffered personal injury and economic damages in excess of $750,000.00.

45.    The proximate cause for the plaintiff's economic damages and personal injuries is from the acts of the defendants, the policy, practice or custom of the employer City to discriminate and retaliate, and the unequal treatment in the disciplinary and pension processes,

because Plaintiff engaged in a fundamental right activity, such as speech and petition clause action, and belonged to protective class, viz African American race.

46.     There was no legitimate governmental reason to treat differently the plaintiff to other persons similarly situated.

47.     Plaintiff was treated differently. Plaintiff was terminated for alleged misconduct. However, white officers, who have engaged in equal or more serious misconduct were not terminated or even subjected to discipline. For example: (a) the white employee who withheld evidence during a criminal trial and later civil rights trial of former whistle blowing City of Philadelphia police officer Charlie Bucceroni. The employee, white, was an internal affairs officer and he was not terminated or even subjected to discipline; rather, he was promoted after the above described misconduct was discovered and known by the City to have occurred. Also, defendant Ramsey's prior PBI advocate, then Captain Flacco, a white male, made false statements to Ramsey and the Integrity Officer for the Mayor's Office during an integrity investigation by the Mayor's office in to misconduct by the police department's advocate during a prosecution of a police officer that had aided another police officer to pursue employment discrimination because of race charge. White officer Flacco was not terminated or even subjected to investigation and/or discipline by Ramsey. Rather, Flacco was promoted thereafter and the promotion was with Ramsey's approval. Ramsey then moved Flacco to a more prestigious position in the police department that requires less work. Ramsey did not pursue discipline and a criminal prosecution of police Lt. Richard Brown of Central Detectives for theft of court overtime. Rather, Ramsey allowed Brown to retire and collect his pension. All three referenced officers not punished by Ramsey had not filed lawsuits against the City.

48.     As a result of the policy, the employment discrimination or retaliation, and the acts of the aider and abettor defendants, the plaintiff sustained economic damages of lost wages and employment benefits, such as but not limited to: pension money, pension values, health and other employment insurance benefits, uniform pay, differential and holiday pay, which loss is in excess of $750,000.00 dollars.

49.     As a result of the policy, the employment discrimination or retaliation, and the acts of the aider and abettor defendants, the plaintiff sustained injury, such as but not limited to loss of society, humiliation, embarrassment, mental anguish and extreme emotional distress, which distress manifested to physical form; such as but not limited to: loss of appetite, mood swings, lack of concentration, nervous twitches in the face, fear and apprehension, unset stomach, and sleeplessness

**COUNT II**
**42 USC 1983 et seq.**
**First Amendment – retaliation**
**Deprivation of Free Speech & Petition Clause Right**
**And under a policy (Monell)**
**Boyer v. Ramsey (individually seeking punitive damages) and City of Philadelphia**

50.     Plaintiff repeats all proceeding paragraphs here and as if each were repeated verbatim.

51.     Plaintiff engaged in speech and Petition clause activity. With regards to the speech activity the Plaintiff spoke out in court proceedings against the City of Philadelphia and its employees for race discrimination. As for the petition clause activity the plaintiff initiated a lawsuit in the United States District Court, for the Eastern District of Pennsylvania. The lawsuit concerned municipal public employment discrimination and misuse of investigate employees and the disciplinary system for the City of Philadelphia police department for the purpose to discriminate against employees because of race.

52.     Plaintiff's speech and/or petition clause activity was a substantial or motivating factor in defendant's decision to discharge plaintiff from employment and withhold Plaintiff vested pension property.

53.     The defendants' actions were "under color" of the authority of state law or custom; and defendants' actions were the proximate or legal cause of damages sustained by the plaintiff.

54.     The defendants' action were deliberate, intentional, reckless, malicious and in reckless disregard for or deliberate indifference of the plaintiff's First Amendment free speech and petition clause rights, which rights when deprived by the defendants were clearly established in law at the time and provided notice to the defendants their conduct would subject them to liability pursuant to 42 USC 1983, et. seq. and punitive damages.[1]

55.     As a direct result of the Defendants actions the plaintiff suffered personal injury and economic damages in excess of $750,000.00.

56.     The proximate cause for the plaintiff's economic damages and personal injuries is the acts under color of state law of the defendants and the policy, practice or custom of the employer City.

**COUNT III**
**42 USC 1983 et seq.**
**Fourteenth Amendment - Equal Protection**
**Treat unequally because of race and protected activities**
**Boyer v. Ramsey**

57.     Plaintiff repeats all proceeding paragraphs here and as if each were repeated verbatim.

---

[1] Punitive damages are not sought against the City of Philadelphia.

58.     The Defendant City has a custom and practice to disparity treat minorities and to unequally treat minorities with the employment disciplinary system and to treat more favorably non-minorities for the same or similar conduct. The policy is to treat more harshly in the terms and conditions of employment those that engage in federally protected activities,  such as to sue the city or make charges of employment discrimination,  and to treat more favorably those that do not engage in similar conduct.

59.     The City through the acts of Ramsey or those under his control and supervision, implement and/or aid or abet the practice or custom.

60.     Ramsey used the policy against the Plaintiff and to terminate the Plaintiff.

61.     Ramsey has used the unwritten policy, or practice and/or custom against other City of Philadelphia minority police officers and one are known to have been used against non-minority or suspect class employee. For example one officer Ramsey used the unwritten policy against (a) the police used against Gail Newsome Middleton, who is an African-American female. Newsome sued the City for race discrimination in employment. The City through Ramsey and those under his control and supervision stated an internal affairs investigation against Newsome to determine how evidence in Newsome's case was obtained. The investigation was stooped after its initiation and the policy was reported to the Court. (b) In a matter involving former police officer Christa Hayburn, a female too, she was subjected to an internal affairs investigation following her testimony; the investigation was to look into her testimony and a corporation started by the husband. Hayburn too had filed an employment discrimination lawsuit against the City and a high ranking supervisor.

62.     The defendants' actions were "under color" of the authority of state law or custom; and defendants' actions were the proximate or legal cause of damages sustained by the plaintiff.

63.     The defendants' action were deliberate, intentional, reckless, malicious and in reckless disregard for or deliberate indifference of the plaintiff's First Amendment free speech and petition clause rights, which rights when deprived by the defendants were clearly established in law at the time and provided notice to the defendants their conduct would subject them to liability pursuant to 42 USC 1983, et. seq.

64.     As a direct result of the Defendants actions the plaintiff suffered personal injury and economic damages in excess of $750,000.00.

65.     The proximate cause for the plaintiff's economic damages and personal injuries is the acts under color of state law of the defendants and the policy, practice or custom of the employer City.

## COUNT IV
## 42 USC 1983 et seq.
## Fourteenth Amendment (Monell)
## Policy to treat unequally because of race and protected activities
## Boyer v. City of Philadelphia

66.     Plaintiff repeats all proceeding paragraphs here and as if each were repeated verbatim.

67.     The Defendant City has a custom and practice to disparity treat minorities and to unequally treat minorities using the employment disciplinary system. The policy practice or custom includes to treat more favorably non-minorities for the same or similar conduct.

68.     The policy, practice or custom is to treat minorities and those that engage in federally protected activities, such as to sue the city or make charges of employment

discrimination, more harshly in the terms and conditions of employment and to treat more favorably those that do not engage in similar conduct or not a minority class member.

69.     The policy, practice or custom is intended to chill rights and to dissuade others from engaging in activities protected by law.

70.     The City, Defendant Ramsey and the does in an act to further the policy, practice or custom have created, implemented and used against the Plaintiff (and others) a disciplinary policy that was not bargained under and as required by Pennsylvania Act 111 labor law.

71.     The City through the acts of Ramsey or those under his control and supervision, implement and/or aid or abet the practice or custom.

72.     Ramsey used the policy, practice or custom against the Plaintiff and to terminate the Plaintiff and withhold Plaintiff's pension property.

73.     Ramsey has used the policy, practice and/or custom to retaliate and with the disciplinary system against other City of Philadelphia minority police officers in the Plaintiff class. The policy, practice or custom is not known to have been used against non-minority or suspect class employees. One minority officer that Ramsey has used the policy practice or custom against is police officer Gail Newsome Middleton, who is an African-American female. Newsome sued the City for race discrimination in employment. The City through Ramsey and those under his control and supervision stated an internal affairs investigation against Newsome to determine how evidence in Newsome's case was obtained. The investigation was stooped after its initiation and the policy was reported to the Court. Another police officer is Christa Hayburn, a female; she was subjected to an internal affairs investigation following her testimony to maintain Heart and Lung benefits. The investigation was to look into her testimony about not having an interest in a corporation started by the husband. Hayburn had filed an employment

14

discrimination lawsuit against the City and a high ranking police supervisor. Keshia Johnson, an African-American female, who had filed an EEOC charge against the head of the police department Equal Employment Office and then spoke publically in the televised media was subjected not only to an internal investigation but also an external never done before investigation by an outside law office.

74.     The defendants' actions were "under color" of the authority of state law or custom; and defendants' actions were the proximate or legal cause of damages sustained by the plaintiff.

75.     The defendants' action were deliberate, intentional, reckless, malicious and in reckless disregard for or deliberate indifference of the plaintiff's First Amendment free speech and petition clause rights, which rights when deprived by the defendants were clearly established in law at the time and provided notice to the defendants their conduct would subject them to liability pursuant to 42 USC 1983, et. seq.

76.     As a direct result of the Defendants actions the plaintiff suffered personal injury and economic damages in excess of $750,000.00.

77.     The proximate cause for the plaintiff's economic damages and personal injuries is the acts under color of state law of the defendants and the policy, practice or custom of the employer City.

**COUNT V**
**State Claim**
**PA Human Relations Act**
**Discrimination – Retaliation**
**Boyer v City of Philadelphia (Employer)**
**Charles Ramsey as an Aider and Abettor**

78.     Plaintiff repeats all proceeding paragraphs here and as if each were repeated verbatim.

79.     Plaintiff is a member of protected person, because he is a person and/or employee within the intent or meaning off the Pennsylvania Human Relations act.

80.     Plaintiff is a protected person under the Pennsylvania Human Relations act, because he opposed employment discrimination.

81.     The Defendant City has a policy of employment discrimination and under that policy the City denied equal employment and employment opportunity.

82.     The City is a covered entity under the Pennsylvania Human Relations Act and is an employer as intended or defined by the Act.

83.     The City deprived the Plaintiff of equal employment and employment opportunities because of his race and/or because Plaintiff opposed employment discrimination and/or made and/or prosecuted a charge of employment discrimination in the agency and/or court.

84.     Defendant Charles Ramsey and the Does are aider and abettors as such term is defined or intended under the Pennsylvania Human Relations act; they, by and because their acts, as the acts are describe above and incorporated here, aided and abetted the City Employer's policy, which aid caused or abetted the damages and injury resulting from the policy, which the Plaintiff suffered.

85.     Plaintiff has filed a duel charge of Relation and employment discrimination with the Pennsylvania Human relations Commission.

86.     Plaintiff has exhausted administrative remedies and been issued a right to sue letter.

16

87.     As a result of the policy, the employment discrimination or retaliation, and the acts of the aider and abettor defendants, the plaintiff sustained economic damages of lost wages and employment benefits, such as but not limited to: pension money, pension values, health and other employment insurance benefits, uniform pay, differential and holiday pay, which loss is in excess of $750,000.00 dollars.

88.     As a result of the policy, the employment discrimination or retaliation, and the acts of the aider and abettor defendants, the plaintiff sustained injury, such as but not limited to loss of society, humiliation, embarrassment, mental anguish and extreme emotional distress, which distress manifested to physical form; such as but not limited to: loss of appetite, mood swings, lack of concentration, nervous twitches in the face, fear and apprehension, unset stomach, and sleeplessness.

**COUNT IV**
**State Constitutional Claims**
**Discrimination and Retaliation**
**Article 1 Section 1, 7, 17, 20 and 26**
**Free Speech & Petition Clause and Discrimination**
**Boyer v City of Philadelphia, Charles Ramsey and the Does**

89.     Plaintiff repeats all proceeding paragraphs here and as if each were repeated verbatim.

90.     Defend ant Ramsey retaliated against and deprived the Plaintiff of the state constitutional inherit right to pursuant of happiness and liberty to pursue employment and/or not impair contract rights that provide for continual employment, as such rights are secured under Art 1 sec 1 and 17 of the Commonwealth of Pennsylvania constitution.

91.     Defendants Ramsey and the Does retaliated against and deprived the Plaintiff of the state constitutional inherit civil right, such as to petition the court and speech freely in court

about employment discrimination without fear of retaliation as such right is provided under Art 1 Sec 7 and 20 of the Commonwealth of Pennsylvania Constitution.

92.     The City of Philadelphia and defendant Ramsey and the Does retaliated against and deprived the Plaintiff of the state constitutional inherit right under Art 1 sec 26 to be free from discrimination because of race or other activity protected by law or constitution.

93.     As a result of the discrimination, retaliation, and deprivation of state rights the plaintiff sustained economic damages of lost wages and employment benefits, such as but not limited to: pension money, pension values, health and other employment insurance benefits, uniform pay, differential and holiday pay, which loss is in excess of $750,000.00 dollars.

94.     As a result of the discrimination or retaliation, and deprivation of state rights the plaintiff sustained injury, such as but not limited to loss of society, humiliation, embarrassment, mental anguish and extreme emotional distress, which distress manifested to physical form; such as but not limited to: loss of appetite, mood swings, lack of concentration, nervous twitches in the face, fear and apprehension, unset stomach, and sleeplessness.

VI.    Prayer for Relief

WHEREFORE, Plaintiffs prays the Court enter judgment for her and against the Defendants; to hold the Defendants joint and several liable; to award the Plaintiff such relief as to make Plaintiffs whole, including such relief as, but not limited to, compensatory and consequential and punitive damages[2], front and back pay, negative tax consequence relief, reasonable attorney fees, litigation costs, and any and all other such relief, including equitable relief, allowed by law or that the Court deems proper and just. Including reinstatement, declaring the Defendants acts, actions or omissions and conduct to have violated the Plaintiff's constitutional rights, the policy practice or custom

---

[2] Punitive damages are not sought against the City of Philadelphia and/or for Court I or under the Pennsylvania Human Relations claim.

unconstitutional, overly broad or sweeping, and to enjoin the City and all employees of the City

from aiding or abetting the policy practice and custom declared unconstitutional.

Date:   11/7/2013                                    Respectfully submitted,


                                                     BY _____ /s/
                                                     Brian M. Puricelli, Esq.
                                                     Attorneys for Plaintiff
                                                     LAW OFFICES OF BRIAN M. PURICELLI
                                                     691 Washington Crossing Rd.
                                                     Newtown PA 18940
                                                     (215) 504-8115/ 8006