IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDRE BOYER,<br>       Plaintiff,<br><br>       v.<br><br>THE CITY OF PHILADELPHIA,<br>COMMISSIONER CHARLES RAMSEY,<br>TWO JANE OR JOHN DOES,<br>CAPTAIN BRANVILLE BARD,<br>CAPTAIN ROLLIN LEE,<br>LIEUTENANT KARYN BALDINI, and<br>OFFICER ANGEL ORTIZ,<br>       Defendants. | CIVIL ACTION<br><br><br><br><br>NO.  13-6495 |

**M E M O R A N D U M**

DuBois, J.                                                                                                           December 17, 2015

### I.   INTRODUCTION

Plaintiff, Andre Boyer is an African-American who was employed by the City of Philadelphia ("City") as a police officer from 1997 until his termination in September 2013.  In his Amended Complaint, he alleges that the City and five police officers retaliated against him for filing a racial discrimination lawsuit against the City in 2012 and for reporting the wrongdoing of other police officers, discriminated against him on the basis of his race, and committed libel and slander when they made statements about plaintiff.  Presently before the Court is defendants' Motion to Dismiss.  For the reasons set forth below, the Motion is granted in part and denied in part.

### II.   BACKGROUND

On May 23, 2012, plaintiff filed a lawsuit against the City and Karyn Baldini in this Court, Civil Action No. 12-2826 (the "2012 action").  In that action, plaintiff asserted racial discrimination claims under 42 U.S.C. §§ 1981 and 1983 and Title VII of the Civil Rights Act of

1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., and state law claims for defamation of character. The parties ultimately settled the 2012 action and it was dismissed with prejudice on November 19, 2013.  On November 7, 2013, plaintiff filed the pending suit against the City, Philadelphia Police Commissioner Charles Ramsey, Captain Branville Bard, Captain Rollin Lee, and Baldini, claiming that he was unjustifiably disciplined and ultimately terminated in retaliation for filing the 2012 action.  By Orders dated May 28, 2015, a separate action filed by plaintiff alleging that his former partner, Angel Ortiz, had retaliated against plaintiff for whistleblowing, was consolidated with this action and plaintiff was granted leave to file an amended complaint.

The Amended Complaint alleges that, in retaliation for his filing of the 2012 action, defendant Baldini began to scrutinize plaintiff's investigations and published a report that led to plaintiff's cases being reinvestigated or not prosecuted.  Plaintiff reported Baldini's harassment to defendant Ramsey, and approximately one week later, plaintiff was removed from street duty and assigned to desk duty without explanation.  Defendant Lee—one of plaintiff's supervisors—informed plaintiff that he "was very well known" to the Internal Affairs Division, where Baldini worked, and Lee said he "did not want any problems from Plaintiff."  Plaintiff submitted written complaints to his superiors that he "feared for his safety because he was placed in a retaliatory work environment," but avers that he received no response.  Plaintiff also alleges that, between the filing of the 2012 action and his termination, he was falsely accused of having stolen money from an arrestee in 2011 and was unjustifiably disciplined when defendant Ramsey referred him to a Police Board of Inquiry ("PBI") hearing.  With respect to the 2011 arrest, plaintiff reported to a Philadelphia assistant district attorney that his partner, defendant Ortiz, had falsified police reports and committed perjury.  Ortiz allegedly retaliated against plaintiff by giving false testimony at plaintiff's arbitration and PBI hearings concerning the 2011 arrest.  Plaintiff also claims that he was pressured to admit at the PBI hearing that he had committed the theft in order to keep his job.

Ultimately, the PBI recommended that Boyer be suspended, but Ramsey allegedly increased Boyer's discipline to a suspension with intent to dismiss. Boyer's employment was subsequently terminated in September 2013.

The Amended Complaint contains six counts. Count I asserts claims for employment retaliation pursuant to Title VII, 42 U.S.C. § 2000e *et seq.*, against Ramsey and the City. Count II asserts claims of retaliation for the exercise of plaintiff's First Amendment rights pursuant to 42 U.S.C. § 1983 against all defendants. Count III asserts claims of racial discrimination in violation of the Equal Protection Clause pursuant to 42 U.S.C. § 1983 against all defendants. Count IV asserts claims for employment retaliation under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 955, against Ramsey and the City. Count V asserts claims for violation of Pennsylvania's Whistleblower Law, 43 Pa. Stat. Ann. § 1423, against Ramsey, the City, and Ortiz. Finally, Count VI asserts a claim for common law libel and slander against Ramsey, the City, Baldini, and Ortiz.

Presently before the Court is defendants' Motion to Dismiss, which seeks dismissal of all claims with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). First, defendants argue that the Title VII and PHRA claims must be dismissed because plaintiff has not presented any evidence that he exhausted his administrative remedies. Second, defendants contend that plaintiff's Title VII, PHRA, First Amendment, and Equal Protection claims must be dismissed because the Amended Complaint fails to allege sufficient facts to show that the alleged retaliation was caused by the filing of the 2012 action by plaintiff. Third, defendants seek dismissal of plaintiff's § 1983 claims against the City on the ground that plaintiff fails to allege that a specific policy or practice of the City caused his injury. Finally, defendants argue that plaintiff failed to plead that his whistleblowing activities were connected to his discipline and termination, and that the libel and slander claims are time-barred.

### III. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion to dismiss.  To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### IV. DISCUSSION

#### A. Title VII and PHRA Claims

Defendants argue that plaintiff's Title VII and PHRA claims must be dismissed for two reasons.  First, defendants contend that plaintiff cannot meet a threshold requirement of pursuing claims under Title VII and the PHRA because plaintiff has not produced documentation proving that he exhausted his administrative remedies.  Second, defendants argue that the Amended Complaint pleads insufficient facts to plausibly claim that plaintiff's discipline and termination were caused by his protected activity.  The Court rejects both of these arguments.

1. Exhaustion

Defendants are correct that a plaintiff must exhaust his administrative remedies under both Title VII and the PHRA by filing a charge of discrimination with the EEOC and the Pennsylvania Human Relations Commission ("PHRC"), receiving a right to sue letter, and filing any lawsuit within 90 days of receiving that letter.  Plaintiffs may "cross-file" their EEOC charge and the EEOC will assume responsibility for transmitting that complaint to the PHRC.  *Wardlaw v. City of*

*Philadelphia*, No. 09 Civ. 3981, 2011 WL 1044936, at *3 (E.D. Pa. March 21, 2011).  The facts alleged in the subsequent Title VII lawsuit must be "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom."  *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984).  However, at the pleading stage, a plaintiff "is not required to attach the EEOC/PHRC charges or the right to sue letters to his" complaint, and a plaintiff's "only burden is to sufficiently *allege* exhaustion."  *Wardlaw*, 2011 WL 1044936, at *3; *see also Carlton v. City of Philadelphia*, No. 03 Civ. 1620, 2004 WL 633279, at *2 (E.D. Pa. March 30, 2004) ("Plaintiff's Title VII claim will not be dismissed for failure to produce the right-to-sue letter."); *Harley v. City of Philadelphia*, No. 01 Civ. 6143, 2003 WL 22597606, at *2 (E.D. Pa. Nov. 4, 2003) (same).

       The Amended Complaint in this case states that in "August and September of 2013, Plaintiff filed a retaliatory race discrimination claim with the [EEOC] and the charge was cross-filed with the [PHRC]," that the charge concerned the City's "policy to discriminate and retaliate in employment because of race and against those who complain about same," and that plaintiff "exhausted his administrative remedies, requested a right to sue letter, and filed [this] suit within ninety days of receipt of that letter."  Construing the allegations in the Amended Complaint in the light most favorable to the nonmoving party, plaintiff has adequately pled exhaustion of his administrative remedies under both Title VII and the PHRA for his claims that he was retaliated against for filing the 2012 racial discrimination action.  Thus, defendants' Motion to Dismiss the Title VII and PHRA claims on these grounds is denied.

       Defendants claim they have "no record of plaintiff engaging in the EEOC process in August and September of 2013."  However, that is not proper ground for granting their Motion to Dismiss.  The allegation that plaintiff cross-filed a charge alleging that he was retaliated against on the basis of race and for "complain[ing] about same" is sufficient to withstand a motion to dismiss.  If, after discovery, however, plaintiff fails to adduce evidence sufficient to establish that he

exhausted his administrative remedies as to all claims, defendants may raise the exhaustion argument in a motion for summary judgment and/or at trial.

        2. Adequacy of Facts Alleged in Support of Causation

Title VII and the PHRA are interpreted to be co-extensive, and require a plaintiff to allege "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Thompson v. Kellogg's USA*, 619 F. App'x 141, 144 (3d Cir. 2015). Retaliation claims require the employee to show that his protected activity was the but-for cause of the alleged retaliation. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). Pleading the third element requires facts showing "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis,* 480 F.3d 259, 267 (3d Cir. 2007).

Defendants argue that the alleged protected activity of filing the 2012 action is "too remote in time" from the September 2013 termination "to be unduly suggestive of retaliation." While the passing of more than a year between the protected activity and alleged retaliation "standing alone. . . is insufficient to establish a causal connection," *Wadhwa v. Sec'y, Dep't of Veterans Affairs*, 505 F. App'x 209, 215 (3d Cir. 2012), "[i]t is important to emphasize that it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn. . . the absence of immediacy between the cause and effect does not disprove causation." *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997). When timing alone is insufficient, courts must determine whether "timing plus other evidence," including a pattern of antagonism, establishes causation. *Blakney v. City of Philadelphia*, 559 F. App'x 183, 186 (3d Cir. 2014).

The Amended Complaint states that plaintiff was subjected to allegedly retaliatory conduct during the period between the filing of the 2012 action and his September 2013 termination. Specifically, the Amended Complaint alleges that "[i]mmediately following and causally-related [to the 2012 action], there occurred a pattern of antagonistic actions initiated by" the City and Ramsey, which "included increased and unjustified discipline, suspension without pay, [and] discharge." Plaintiff also avers that the following specific events constitute a pattern of antagonism that occurred after he filed the 2012 action:

- plaintiff was accused of stealing money from an arrestee in 2011 and was unjustifiably disciplined by being referred to a PBI hearing;
- plaintiff was pressured to admit at the PBI hearing that he had committed the theft during the 2011 arrest in order to keep his job;
- defendant Baldini began to scrutinize plaintiff's investigations in retaliation for his filing of the 2012 action and published a report that ultimately led to plaintiff's cases being reinvestigated or not prosecuted;
- plaintiff complained to his superiors that he "feared for his safety because he was placed in a retaliatory work environment" but received no response;
- approximately one week after plaintiff reported defendant Baldini's harassment to defendant Ramsey, plaintiff was removed from street duty and assigned to desk duty;
- defendant Lee—one of plaintiff's supervisors—informed plaintiff that he "was very well known at" the Internal Affairs Division and Lee "did not want any problems from Plaintiff."

The Court finds that these allegations are sufficient to plead a pattern of antagonism that occurred over the approximate fifteen months between plaintiff's filing of the 2012 action in May 2012 and his termination as a police officer by the City of Philadelphia in September 2013. This is sufficient to allege plausible causation and thus defendants' Motion to Dismiss the Title VII and PHRA claims on this ground is denied.

### 3. Proper Defendant in Title VII and PHRA Claims[1]

Plaintiff asserts his Title VII claim against both the City and Ramsey. However, "the only proper defendant in a Title VII case is the 'employer.'" *Foxworth v. Pa. State Police*, 2005 WL 840374, at *4 (E.D. Pa. 2005), *aff'd* 2007 WL 295358 (3d Cir. 2007). Thus, Ramsey is an improper and redundant defendant, and the claim against him "merge[s] with the remaining claim" against the City. *Kim v. City of Philadelphia*, No. 96 Civ. 5409, 1997 WL 277357, at *1 (E.D. Pa. May 21, 1997) (DuBois, J.). Moreover, "[a] suit against a governmental official in his or her official capacity is treated as a suit against the governmental entity itself." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 580 (3d Cir. 2004). As a consequence, plaintiff "suffers no prejudice" from having his Title VII claim proceed against the City alone. *Foxworth*, 2005 WL 840374, at *4. Because it would be futile and unnecessary to amend the Amended Complaint to state a claim against Ramsey, the Court, *sua sponte*, dismisses the Title VII claim against Ramsey with prejudice. Plaintiff's PHRA claim against Ramsey does not suffer from the same problem because an individual may be liable under the PHRA's aider and abettor provision. 43 Pa. Stat. Ann. § 955(e).

### B. Section 1983 Claims

Plaintiff avers that all defendants retaliated against him for exercising his First Amendment rights by filing the 2012 action, filing grievance petitions with his union, and speaking to assistant district attorneys and Police Department employees and supervisors about the wrongdoing of other police officers. To state a claim under § 1983 for First Amendment retaliation, plaintiff must plead (1) that he engaged in activity protected by the First Amendment and (2) that the protected activity was a substantial or motivating factor in the retaliation against plaintiff. *Swineford v. Snyder Cty. Pa.*, 15 F.3d 1258, 1270 (3d Cir. 1994).

---

[1] This issue was not raised in the Motion to Dismiss.

Plaintiff also claims that defendants treated him more harshly in disciplinary contexts because he is African-American, in violation of the Equal Protection Clause. The elements of an Equal Protection claim under § 1983 based on employer discrimination against an employee are "identical" to the elements required to establish a Title VII employment discrimination claim. *Wood v. Univ. of Pittsburgh,* 395 F. App'x 810, 816 (3d Cir. 2010). A plaintiff must prove an intentional equal protection violation by showing that he "received different treatment from that received by other individuals [who were] similarly situated." *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005).

　　　1. <u>First Amendment Retaliation Causation</u>

Defendants first argue that plaintiff failed to plead that his termination was caused by the exercise of his First Amendment rights. Defendants support this argument by referencing the same allegations that defendants argued were insufficient to state a claim under Title VII and the PHRA. The Court rejects this argument.

A plaintiff asserting a First Amendment retaliation claim "must show that his protected activity was a substantial or motivating factor in the alleged retaliatory action." *Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 493 (3d Cir. 2002). Plaintiff makes this showing with the same temporal proximity and pattern of antagonism evidence that is relied upon in the Title VII/PHRA context. *Alers v. City of Philadelphia*, 919 F. Supp. 2d 528, 555 (E.D. Pa. 2013) (citing *DeFlaminis,* 480 F.3d at 267 (3d Cir. 2007)). Plaintiff has adequately pled that a pattern of discipline and unexplained antagonism consisting of changing his assignment, re-investigating or not prosecuting his cases, and ultimately terminating his employment occurred after he exercised his First Amendment rights. Accepting these allegations as true, the Amended Complaint permits an inference that the exercise of plaintiff's First Amendment rights was causally connected to the discipline and termination of his employment. *See Germantown Cab Co. v. Philadelphia Parking*

*Auth.*, No. 14 Civ. 4686, 2015 WL 4770722, at *8 (E.D. Pa. Aug. 12, 2015) (denying motion to dismiss First Amendment retaliation claim on causation grounds when complaint alleged that plaintiff "engaged in long-term litigation against the [defendant] and that, within months thereafter, Defendants began taking harmful actions against" plaintiff). Accordingly, defendants' Motion to Dismiss the § 1983 First Amendment retaliation claim on this ground is denied.

      2. <u>Equal Protection Comparator Allegations</u>

Plaintiff alleges that defendants treated him more harshly in disciplinary contexts than similarly situated white officers because plaintiff is African-American. Defendants move to dismiss this claim on the ground that that the white officers identified in the Amended Complaint "are not similarly-situated to plaintiff because of their positions" and that "plaintiff fails to show how the [white] comparators' [mis]conduct is similar to his misconduct." The Court rejects these arguments.

"Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Startzell v. City of Philadelphia, Pennsylvania*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992)). Plaintiff's burden to find similarly situated comparators "does not mean [the comparators] must be *identically* situated." *Chan v. Cty. of Lancaster*, No. 10 Civ. 3424, 2013 WL 2412168, at *17 (E.D. Pa. June 4, 2013). Determining whether comparators are similarly situated "requires a court to undertake a fact-intensive inquiry on a case-by-case basis rather than in a mechanistic and inflexible manner." *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 305 (3d Cir. 2004).

First, the rank or position of a comparator is not relevant to this analysis absent some rationale for why employees of different ranks would be treated differently for the same or similar misconduct. In *Chan*, for example, the plaintiff was a County employee who claimed that she was terminated because her employer treated her more harshly under its ethics policy due to her race.

2013 WL 2412168, at *17.  The defendants moved for summary judgment on the ground that the comparators identified by plaintiff were not similarly situated because they held different upper-level positions and had committed different violations of the ethics policy.  *Id.*  The *Chan* court rejected this argument and held that plaintiff's showing was sufficient in the absence of "evidence demonstrating that the County ethics policy which [defendants] contend plaintiff violated differs from the ethics policy applicable to… any other County employee."  *Id.*

In a comparable Equal Protection case, the plaintiff alleged that other "employees" facing pending assault charges were disciplined less harshly than she was while facing pending DUI charges, but the plaintiff provided no information regarding those employees' positions.  *Reed-Seeger v. Sch. Dist. of Philadelphia*, No. 14 Civ. 0287, 2014 WL 7404133, at *4 n.6 (E.D. Pa. Dec. 30, 2014).  The court there held that this was sufficient to plead a prima facie Equal Protection claim and denied defendants' motion to dismiss.  *Id.*

In this case, defendants have not articulated a rationale for why the rank of the comparators identified by plaintiff is relevant to whether they are similarly situated.  The Amended Complaint states that plaintiff held the rank of police officer and was disciplined and terminated for, *inter alia*, allegedly stealing money from an arrestee and for reporting potential misconduct to an assistant district attorney.  In comparison, plaintiff alleges that specific white officers, holding the rank of officer, lieutenant, or captain, committed other forms of misconduct and were not disciplined or were promoted.  Defendants provide no explanation of why rank is relevant to discipline.  Unless the Police Department's disciplinary policy provides that police officers, like plaintiff, are punished differently than captains or lieutenants for the same conduct, their positions are irrelevant to disciplinary treatment and they may be considered comparators.  *See Chan*, 2013 WL 2412168, at *17; *see also Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992) (requiring comparators to be alike "in all *relevant* aspects") (emphasis added).  Accordingly, the Court rejects defendants'

argument that rank alone precludes the white officers identified by plaintiff from being considered comparators.

Second, with respect to the conduct of the comparators, plaintiff may plead a prima facie Equal Protection claim by alleging that comparators committed misconduct that is equally serious as the misconduct committed by plaintiff. *See Reed-Seeger*, 2014 WL 7404133, at *4 n.6. In this case, plaintiff alleges that white officers who committed perjury, withheld evidence during a criminal trial, and made false statements during internal investigations were not disciplined or were promoted. Because this misconduct allegedly is at least as serious as plaintiff's theft of money from an arrestee and the reporting of the claimed misconduct of other officers to an assistant district attorney, the Court rejects defendants' argument that plaintiff "fails to show how the [white] comparators' conduct is similar to his misconduct."

Finally, the fact-intensive nature of this inquiry relating to comparators weighs in favor of permitting plaintiff to engage in discovery on this issue.

For all of the foregoing reasons, defendants' Motion to Dismiss the § 1983 Equal Protection claim on this ground is denied.

### 3. *Monell* Claims

Plaintiff asserts that the City violated his rights protected by the First Amendment and the Equal Protection Clause when it disciplined and terminated him for filing the 2012 action and for complaining of racial discrimination. Under *Monell*, municipalities are "included among those persons to whom § 1983 applies." *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978). For a municipality to be found liable, "those whose edicts or acts may fairly be said to represent official policy" must adopt a "policy or custom" causing an actionable § 1983 injury. *Id.* at 694. A municipal "custom" is a practice that is "so widespread as to have the force of law,"

though the practice "has not been formally approved by an appropriate decisionmaker." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

Defendants argue that plaintiff's *Monell* claims fail to identify to any "*actual* policy or custom . . . that was either issued or ratified by a policymaker." The standard articulated by defendants is too high. The Supreme Court has held that *Monell* claims are subject to the same notice pleading requirements as any other claim. *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166-67 (1993). Additionally, *Monell* claims need not be based on an officially ratified policy, but may allege a constitutional deprivation "pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 691.

The Amended Complaint avers that the City has "a *de facto* intentional policy of treating racial minorities, like Plaintiff, more harshly in [the] terms [and] conditions of [their] employment [and] in disciplinary contexts" at the Police Department and a policy of retaliating against individuals who "speak[] out against unequal treatment" by the Police Department. Simply alleging the existence of such a custom or policy would be a mere "legal conclusion" that is "not entitled to the assumption of truth" and must be disregarded, *Iqbal*, 556 U.S. at 678, but the Amended Complaint in this case contains more, albeit not much more. In support of his argument that there is a widespread custom of treating racial minorities differently, plaintiff alleges that many white officers who committed misconduct were not disciplined or were promoted. Plaintiff also supports his claim of a custom of retaliating against individuals who complain of unequal treatment by alleging that the Police Department disciplined and investigated two other employees who sued for employment discrimination.

"Although the details of this alleged policy, custom or practice are less than clearly articulated in the complaint, [the Court] shall grant Plaintiff the opportunity to take discovery on

13

this claim." *Garcia v. Newtown Twp.*, No. 09 Civ. 3809, 2010 WL 785808, at *8 (E.D. Pa. Mar. 5, 2010). Accepting the facts alleged in the Amended Complaint as true, plaintiff has sufficiently alleged that the City has customs of retaliating against police officers on the basis of race and on the basis of the exercise of their First Amendment rights. Accordingly, defendants' Motion to Dismiss plaintiff's *Monell* claims is denied.

### 4. Section 1983 Claims Against Individual Defendants

Defendants also argue that plaintiff has failed to plead sufficient facts to hold any of the individual defendants liable under § 1983 for violating plaintiff's First Amendment and Equal Protection rights. The Court agrees with defendants that plaintiff has failed to allege sufficient facts against defendant Bard, because the Amended Complaint contains no factual allegations relating to Bard. Plaintiff's original Complaint lacked any mention of Bard, and plaintiff's failure to cure this problem in the Amended Complaint shows that it would be futile to permit plaintiff to amend on these grounds. Thus, the § 1983 claims against Bard, the only claims asserted against him, are dismissed with prejudice. However, the Amended Complaint alleges facts that, if accepted as true, support a claim that each of the other individual defendants—Ramsey, Baldini, Lee, and Ortiz—retaliated against plaintiff for his protected activity. Accordingly, defendants' Motion to Dismiss the § 1983 claims against the other individual defendants is denied.

### C.   **Whistleblower Claims**

Pennsylvania's Whistleblower Law prohibits an "employer" from discriminating or retaliating against an employee "because the employee. . . makes a good faith report [of]. . . an instance of wrongdoing or waste." 43 Pa. Stat. Ann. § 1423. Causation under the Whistleblower Law is proved in the same way as under Title VII and § 1983: temporal proximity and a pattern of antagonism. *McAndrew v. Bucks County Bd. of Com'rs*, 982 F.Supp.2d 491, 505 (E.D. Pa. 2013).

Defendants argue that plaintiff has not adequately pled that his good-faith reports of wrongdoing caused the alleged retaliation. The Court rejects this argument. The Amended Complaint alleges that in 2012 plaintiff reported in good faith to an assistant district attorney that defendant Ortiz had filed false police reports and committed perjury. During the next year, plaintiff claims that he was subjected to a pattern of antagonism by the City, Ramsey, and Ortiz, which included unjustifiable discipline, termination, and alleged false statements at plaintiff's PBI and arbitration hearings. Such allegations are sufficient to withstand a motion to dismiss plaintiff's claim that this pattern of antagonism occurred "because of" plaintiff's report of wrongdoing.

The City, Ramsey, and Ortiz all qualify as an "employer" under the applicable definition in the Whistleblower Law. *See Rankin v. City of Philadelphia*, 963 F. Supp. 463, 468 (E.D. Pa. 1997) (Brody, J.) (holding co-workers of City employee plaintiff to be "employers" under Whistleblower Law because they were "agents of a public body"). The Court concludes that plaintiff has alleged sufficient facts to state a plausible claim under the Whistleblower Law, and defendants' Motion to Dismiss the whistleblower claims on this ground is denied.

### D. Libel and Slander Claims

Plaintiff concedes that his libel and slander claims are time-barred, and does not contest the dismissal of these claims. Accordingly, the Court dismisses with prejudice Count VI of the Amended Complaint, which alleges claims of libel and slander.

### E. Remaining Claims

The claims remaining in the case are:

- Count I: Title VII claim against defendant City;
- Count II: § 1983 claim of First Amendment retaliation against defendants City, Ramsey, Lee, Baldini, and Ortiz;

- Count III: § 1983 Equal Protection claim against defendants City, Ramsey, Lee, Baldini, and Ortiz;
- Count IV: PHRA claim against defendants City and Ramsey;
- Count V: Whistleblower Law claim against defendants City, Ramsey, and Ortiz.

## V. CONCLUSION

For the reasons stated above, the Court grants defendants' Motion to Dismiss in part and denies defendants' Motion to Dismiss in part. An appropriate order follows.