**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ANDRE BOYER,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| **v.** | |
| **THE CITY OF PHILADELPHIA,** | **NO. 13-6495** |
| **COMMISSIONER CHARLES RAMSEY,** | |
| **Defendants.** | |

**DuBois, J.**                                                                                        **February 22, 2019**

**M E M O R A N D U M**

**I.        INTRODUCTION**

Plaintiff, Andre Boyer, is an African American male who was employed by the City of

Philadelphia (the "City") as a police officer from 1997 until his termination in September 2013.

Plaintiff alleges that, in terminating his employment, the City and former Police Commissioner

Charles Ramsey violated his rights under the Equal Protection Clause of the Fourteenth

Amendment and 42 U.S.C. § 1983.

Presently before the Court are two motions in limine: (1) Defendants' Motion in Limine

to exclude comparator evidence of John McCloskey, Jeffrey Cujdik, and Angel Ortiz (Document

No. 130, filed December 28, 2018); and (2) Defendants' Motion in Limine To Exclude

Testimony of Certain Witnesses (Document No. 135, filed January 7, 2019).  For the reasons set

forth below, Defendants' Motion in Limine to exclude comparator evidence is granted, and

Defendants' Motion in Limine To Exclude Testimony of Certain Witnesses is granted in part and

denied in part.

## II.    BACKGROUND[1]

Plaintiff's claims in this case stem from a series of events, beginning in September of 2011, leading to his termination as a police officer with the Philadelphia Police Department.  On September 6, 2011, plaintiff and Officer Angel Ortiz conducted a traffic stop while on patrol in Philadelphia.  During this stop, plaintiff confiscated money from an occupant of the stopped vehicle, Wurlin Graham.  Graham was never charged with a crime in connection with the traffic stop.  On September 26, 2011, Graham submitted a complaint of police misconduct to the Philadelphia Police Department, alleging that the money confiscated during the stop had not been returned to him and that plaintiff had, in sum, "stolen" his money.

Graham's complaint was received by the Internal Affairs Division ("IAD") of the Philadelphia Police Department on October 5, 2011.  On October 12, 2011, Lieutenant Michael Craighead was assigned to investigate Graham's complaint.  As part of the investigation, Lieutenant Craighead interviewed, among others, Ortiz on April 12, 2012, and June 11, 2012, and plaintiff on May 11, 2012, and June 21, 2012.

At the conclusion of the IAD investigation, Inspector H. Robert Snyder determined that the "investigation could neither prove nor disprove" Graham's allegations that plaintiff had confiscated Graham's money, other than that which plaintiff had recorded on a property receipt and which was returned to Graham by the Police Department.  However, Inspector Snyder also determined that the investigation revealed several departmental violations, including the fact that plaintiff "was deliberately untruthful" during the investigation with respect to suspected

---

[1] In this Memorandum the Court includes only those facts necessary to explain its decision.  Unless otherwise cited, all facts are adopted from the Court's Memorandum and Order ruling on City Defendants' Motion for Summary Judgment, dated July 14, 2017 (Document No. 65).

narcotics and other evidence that plaintiff allegedly recovered during the Graham stop but did not document, in violation of departmental procedures.

The IAD investigation report was sent to the Police Board of Inquiry ("PBI"), which held a hearing on July 23, 2013. At the PBI hearing, before being found guilty, plaintiff was offered a 30-day suspension in lieu of dismissal. Joint Stmt. Uncontested Fact ¶ 20. He turned down that offer. *Id.* ¶ 21. After the hearing, at which Ortiz and others testified, the PBI found plaintiff guilty of four departmental violations arising from the IAD investigation. The four violations were: (1) "Conduct Unbecoming–Lying or attempting to deceive regarding a material fact during the course of any Departmental investigation;" (2) "Conduct Unbecoming–Abuse of authority;" (3) "Disobedience–Failure to follow Departmental procedures for the handling of evidence, personal effects, and all other property taken into custody [with certain exceptions];" and (4) "Disobedience–Failure to follow Departmental procedure for the handling of narcotics, money, explosives, firearms, hazardous materials or forensic evidence." The "Penalty Range" for the first violation was "Dismissal," for the second and fourth violations "5 Day Suspension to Dismissal," and for the third violation "Reprimand to 5 Days Suspension." Based on these findings, the PBI recommended that plaintiff be dismissed. Ramsey approved the recommendation on July 30, 2013, and plaintiff was dismissed from the Philadelphia Police Department on September 2, 2013. Through his union, plaintiff filed a grievance and participated in arbitration proceedings. After arbitration hearings on May 23, 2014, and June 26, 2014, at which Ortiz testified, on August 28, 2014, plaintiff's grievance was denied and his dismissal was upheld.

Plaintiff's original Complaint in this case was filed on November 7, 2013 (Document No. 1). In that Complaint he alleged that the City, Ramsey, and five Jane and John Does

discriminated against him based on his race and retaliated against him for opposing this discrimination in violation of Title VII, the First and Fourteenth Amendments pursuant to § 1983, the Pennsylvania Human Relations Act ("PHRA"), and the Pennsylvania Constitution. Since then, plaintiff has amended his complaint twice. The Second Amended Complaint, filed on April 8, 2016 (Document No. 46), names several additional defendants and contains two counts: (Count One) violation of the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 against the City, Ramsey, Captain Rollin Lee, Lieutenant Karyn Baldini, and two John and Jane Doe defendants (collectively, the "City Defendants") and (Count Two) violations of the Pennsylvania Whistleblower Law against the City, Ramsey, and Ortiz.

Both Ortiz and the City Defendants filed motions for summary judgment. By Order and Memorandum dated July 14, 2017, the Court granted defendant Ortiz's motion and granted in part and denied in part the City Defendants' motion (Document No. 65). After that ruling, plaintiff's only remaining claims were those in Count One for violations of the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 against Ramsey, Lee, Baldini, and two John and Jane Does, and the claim in Count One against the City with respect to the alleged custom of using different disciplinary proceedings for police officers based on their race.[2] Plaintiff's claims as to defendants Lee and Baldini were dismissed with prejudice in a December 20, 2018 Order, after the parties submitted a Joint Statement of Uncontested Facts stating that neither Lee nor Baldini had any involvement in the decision to discipline and subsequently terminate plaintiff. Joint Stmt. Uncontested Facts 3.

---

[2] On October 16, 2017, Boyer's attorney, Stephen O'Hanlon, moved to withdraw as counsel (Document No. 91). After a hearing, the motion to withdraw was granted. The case was then placed in civil suspense for over six months while the Court attempted to obtain counsel for plaintiff under the Attorney Panel for *Pro Se* Plaintiffs in Employment Cases Program. That effort was unsuccessful.

The Court conducted a Final Pretrial Conference on December 20, 2018. Thereafter, defendants filed two motions in limine: (1) Defendants' Motion in Limine to exclude comparator evidence of John McCloskey, Jeffrey Cujdik, and Angel Ortiz (Document No. 130, filed December 28, 2018); and (2) Defendants' Motion in Limine To Exclude Testimony of Certain Witnesses (Document No. 135, filed January 7, 2019). Plaintiff responded to both motions. Defendants also submitted a reply in further support of the Motion in Limine To Exclude Testimony of Certain Witnesses, and plaintiff submitted a sur-reply in opposition to that motion. Both motions are thus ripe for review.

### III.    APPLICABLE LAW

The Court has discretion to rule on evidentiary issues in limine to ensure that the jury is not exposed to confusing, irrelevant, or unfairly prejudicial evidence. *Frintner v. TruePosition*, 892 F. Supp. 2d 699, 707 (E.D. Pa. 2012) (citing *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir.1983), *rev'd on other grounds sub nom.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)). Ruling in limine can serve the interests of efficiency; however, where the "context of trial would provide clarity, the Court may defer the issues until trial." *Frintner*, 892 F. Supp. 2d at 707.

### IV.    DISCUSSION

Plaintiff has two remaining claims. Both allege violations of Equal Protection and are brought under § 1983. First, plaintiff claims that Commissioner Ramsey, acting under the color of state law, intentionally discriminated against him by disciplining him more harshly than other similarly situated Caucasian officers. Second, plaintiff brings a *Monell* claim against the City alleging that the City has a custom of subjecting African American officers to different disciplinary proceedings than Caucasian officers and that those proceedings result in more severe

punishment. In support of these claims, plaintiff seeks to (1) introduce testimony of three proposed comparators, Captain John McCloskey, Jeffrey Cujdik, and Angel Ortiz, and (2) call a series of witnesses whose relevance is disputed by defendants. Defendants contest the admissibility of this evidence. The Court will address each issue in turn.

### A. Defendants' Motion to Exclude Comparator Evidence

Whether comparators are similarly situated is generally a question of fact for the jury. *Abdul-Latif v. Cty. of Lancaster*, 990 F. Supp. 2d 517, 526 (E.D. Pa. 2014). However, in response to a motion in limine a court can exclude comparator evidence where the individuals are not "similarly situated" and thus their testimony and evidence about them is either irrelevant or, if probative, substantially outweighed by a danger of confusing the issues or misleading the jury. *See* Fed. R. Evid. 401, 403; *see also Sprint/United Mgmt. Co. v. Mendelsohn*, 128 S.Ct. 1140, 1146 (2008) ("[Q]uestions of relevance and prejudice are for the District Court to determine in the first instance").

"Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992)). "Which factors are relevant is determined by the context of each case, but often includes a 'showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009); *see also Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011) (stating that the relevant inquiry includes "factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in").

Plaintiff's burden to find similarly situated comparators "does not mean [the comparators] must be identically situated." *Chan v. Cty. of Lancaster*, No. 10- 3424, 2013 WL 2412168, at *17 (E.D. Pa. June 4, 2013); *see also Opsatnik*, 335 F. App'x at 222–23. Nonetheless, the plaintiff must be "similar in all relevant respects." *Opsatnik*, 335 F. App'x at 222–23; *see also Wilcher*, 441 F. App'x at 882; *Doe v. Apria Healthcare Grp. Inc.*, 97 F. Supp. 3d 638, 645 (E.D. Pa. 2015) ("the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions" (quoting *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)).

For the reasons stated below, the Court concludes that none of plaintiff's proposed comparators are "similarly situated" and that evidence of plaintiff's proposed comparators must be excluded because it is irrelevant under Federal Rule of Evidence 401. To the extent that plaintiff's proposed comparator evidence has any relevance, its probative value is substantially outweighed by a danger of confusing the issues or misleading the jury under Federal Rule of Evidence 403.

      1. <u>John McCloskey</u>

Plaintiff's first proposed comparator, John McCloskey, is a Caucasian male who was working in the Philadelphia Police Department as a Captain at the time of his misconduct.[3] According to defendants' Motion in Limine, McCloskey directed police internal records to be altered after two officers under his supervision were involved in a physical confrontation with a

---

[3] In the Court's Memorandum and Order addressing the defendants' first Motion in Limine (Document No. 90, filed on October 13, 2017) the Court deferred ruling on the admissibility of evidence related to Captain McCloskey as a comparator because the Court did not have sufficient information to determine whether McCloskey's misconduct was of "comparable seriousness" to plaintiff's misconduct.

civilian.[4]  Def. Mot. Lim. 4–5.  As a result, McCloskey was charged with (1) Conduct

Unbecoming–Lying or attempting to deceive regarding a material fact; and (2) Conduct

Unbecoming–Abuse of authority.  Commissioner Ramsey ultimately imposed a thirty-day

suspension and transfer as punishment for McCloskey's offenses.[5]  *Id.* at 5.

Defendants argue that McCloskey's misconduct was not similar to plaintiff's and that the

difference in rank between McCloskey, a captain, and plaintiff, an officer, means that they are

not similar in all relevant respects.  *Id.*  The Court rejects defendants' argument as to rank.  As

the Court stated in its September 5, 2018 Memorandum and Order:

> [T]he Court will not exclude comparator evidence based on a difference in rank
> where rank is irrelevant to the seriousness of the misconduct and the proposed
> comparator was disciplined by the same supervisor as the plaintiff.  It would be
> manifestly unfair to exclude evidence of individuals who committed comparable
> misconduct and were disciplined by the same supervisor simply because they have
> a different job title or rank.

*See Boyer v. City of Philadelphia*, No. 13-6495, 2018 WL 4252378, at *8 (E.D. Pa. Sept. 6,

2018); *see also Flores v. Commonwealth of Pennsylvania, et al.*, No. 18-0137, 2018 WL

5884616 at *6 (E.D. Pa. Nov. 9, 2018).

However, where the proposed comparator's conduct differs substantially in a way that

creates "differentiating or mitigating circumstances" distinguishing their conduct from that of the

plaintiff, the individuals are not "similar in all relevant respects." *Opsatnik*, 335 F. App'x at 220,

222–23.  Although plaintiff and McCloskey were charged with two of the same departmental

---

[4] Plaintiff's response to Defendants' Motion in Limine states that McCloskey destroyed the documents related to
this arrest "as a favor" for a retired Philadelphia Captain.  Plaintiff states that the civilian arrested was the retired
captain's grandson who was planning to start at the Philadelphia Police Academy in a few months "and needed this
arrest assault on police to disappear."  Pl. Resp. 4.
[5] It is not clear from the parties' briefing whether McCloskey appeared before a PBI hearing.

violations,[6] plaintiff was charged with, and found guilty of, two additional charges.[7] Furthermore, the conduct underlying the departmental violations was significantly different. While plaintiff's misconduct involved inappropriate conduct during an investigation into how he handled the seizure of money, white powder, and suspected drug paraphernalia discovered during a car stop, McCloskey was found to have violated departmental procedure when he directed internal records to be altered without notifying the appropriate party. Def. Mot. Lim. 5. Although similarly situated does not mean identically situated, based on these facts the Court cannot find that plaintiff and McCloskey were "similar in all relevant respects." *Opsatnik*, 335 F. App'x at 222–23.

For the reasons above, the Court concludes that McCloskey is not a proper comparator. As a result, such evidence would be irrelevant to plaintiff's Equal Protection claims. To the extent that such evidence has any relevance, its probative value is substantially outweighed by a danger of confusing the issues or misleading the jury under Rule 403. The Court thus grants that part of defendants' motion seeking to exclude all comparator evidence of Captain John McCloskey.

2. Jeffrey Cujdik

Plaintiff's second proposed comparator, Jeffrey Cujdik, is a Caucasian male officer in the Philadelphia Police Department. Defendants' Motion in Limine describes Cujdik's misconduct as "improper actions with confidential informants." Def. Mot. Lim. 7. Specifically, Cujdik was charged with (1) "Conduct Unbecoming an Officer" for making a false entry into a police report

---

[6] Conduct Unbecoming – lying or attempting to deceive regarding a material fact and Conduct Unbecoming – abuse of authority.

[7] Disobedience – failure to follow Departmental procedures for the handling of evidence, personal effects, and all other property taken into custody [with certain exceptions]; and Disobedience – failure to follow Departmental procedure for the handling of narcotics, money, explosives, firearms, hazardous materials or forensic evidence.

regarding an arrest; (2) "Neglect of Duty" for providing gifts to Police Informants, (3) "Conduct Unbecoming an Officer," "Unspecified" for allowing a confidential informant to live in a home in which he owned; and (4) "Lying during the course of a Departmental Investigation" for lying about the underlying facts regarding his misconduct. *Id.*

Cujdik was terminated on May 13, 2014, by Commissioner Ramsey through "Commissioner's Direct Action." *Id.* Unlike plaintiff's case, no PBI hearing was held. *Id.* On November 19, 2014, pursuant to the parties' collective bargaining agreement, the case proceeded to arbitration, where Cujdik was reinstated to employment with no backpay and Cujdik's discipline was converted into a thirty-day suspension for "unspecified" conduct unbecoming of a police officer.[8] *Id.*

Although plaintiff and Cujdik were both charged with "Conduct Unbecoming"–Lying or attempting to deceive regarding a material fact during a departmental investigation, in addition to other charges, their underlying conduct was very different. Cujdik's misconduct involved inappropriate interactions with police informants while plaintiff's misconduct occurred during the course of an investigation into a currency forfeiture and the seizure of suspected drug paraphernalia. Given the wide variety of reasons why a supervisor might treat misconduct related to informants differently than misconduct during a forfeiture investigation, the Court

---

[8] Cujdik's arbitration decision appears to be based on an agreement between the parties resulting from a recommendation of the arbitrator after hearing opening arguments. Def. Mot. Lim. Ex. 8. The one-page decision states that "[i]n consideration for the City's execution of, and compliance with, the terms of this document, the [Fraternal Order of Police] shall withdraw its Demand for Arbitration . . . with prejudice." Id. Plaintiff's response states that the agreement in Cujdik's case could not have been entered into "without Commissioner Charles Ramsey['s] approval" because he is the "head policymaker of the Philadelphia Police Department." Pl. Resp. 8.

Defendants argue that these circumstances do not show any inference of discrimination because "[p]laintiff was treated more favorably than Cujdik at every step of the disciplinary process." Def. Mot. Lim. 7–8. Defendants' argument ignores Ramsey's involvement in the reversal of his prior Direct Action. Ultimately, plaintiff had a less favorable outcome than Cujdik, who was reinstated, and all final decisions in Cujdik's case, both to terminate and to reinstate, were made by Ramsey. This difference in treatment, however, would only be relevant in support of plaintiff's claims if plaintiff and Cujdik were similarly situated, and they were not.

cannot conclude that plaintiff and Cujdik were "similar in all relevant respects." *See Opsatnik*, 335 F. App'x at 222 – 23.

The Court concludes that Cujdik is not a proper comparator. As a result, such evidence would be irrelevant to plaintiff's claims. To the extent that such evidence has any relevance, its probative value is substantially outweighed by a danger of confusing the issues or misleading the jury under Rule 403. The Court thus grants that part of defendants' motion seeking to exclude all comparator evidence related to Jeffrey Cujdik.

### 3. Angel Ortiz

Plaintiff's third proposed comparator, Angel Ortiz, was a police officer who was working as plaintiff's partner at the time of the Wurlin Graham arrest.[9] The Court's Memorandum and Order addressing the defendants' first Motion in Limine deferred ruling on the admissibility of evidence related to Angel Ortiz as a comparator because the Court did not have sufficient information about Ortiz and his misconduct and the defendants had not responded to the plaintiff's arguments.

Plaintiff asserts that Ortiz engaged in two instances of misconduct for which he is an appropriate comparator: (1) misconduct during the arrest of James Singleton and (2) misconduct during the arrest of Wurlin Graham.[10]

#### i. *Arrest of James Singleton*

During the arrest of James Singleton, which occurred in 2011, Ortiz omitted the fact that he had previously seized, and then replaced, narcotics prior to a canine arriving on the scene.

---

[9] Ortiz was named in one count of the Second Amended Complaint – Count Two – based on a claimed violation of the Pennsylvania Whistleblower Law. The Court granted Ortiz's Motion for Summary Judgment; he is no longer a party in the case.

[10] Angel Ortiz's nationality or race is unknown. This is relevant because plaintiff's Second Amended Complaint refers specifically to African Americans being treated less favorably that Caucasian individuals. The parties are uncertain as to whether Ortiz is Caucasian. Pl. Resp. 9.

Def. Mot. Lim. 9.  An investigation was then initiated into Ortiz's misconduct and that

investigation resulted in three charges: (1) Conduct Unbecoming – lying or attempting to deceive

regarding a material fact, (2) Disobedience – for failing to follow Department procedures for

handling of narcotics . . . for placing heroin back into Singleton's car after recovering it, and (3)

Conduct Unbecoming – for making a false entry into a police record regarding evidence.  *Id.*  A

PBI hearing was conducted in 2017[11] after which Ortiz was found guilty of "Disobedience," and

"Conduct Unbecoming" for making a false entry into a police record regarding evidence.  *Id.*  He

was found not guilty of lying or attempting to deceive regarding a material fact.  *Id.*  On January

8, 2017, Commissioner Richard Ross, Commissioner Ramsey's successor, adopted the PBI

Board's recommendation of a five-day suspension and reprimand.  *Id.*

Notably, Commissioner Ramsey was not involved in disciplining Ortiz.  While plaintiff

was disciplined in 2013 by Ramsey, Ortiz was disciplined in 2017 by a different decisionmaker,

Ross.  *Id.*  Additionally, both Ortiz and plaintiff went through the PBI process and the

recommendations of the PBI Board were followed in each case.  *Id.*

The proffered Ortiz evidence does not lend support to either of plaintiff's claims.  First,

evidence regarding Ortiz cannot support plaintiff's claim that Ramsey discriminated against him

and treated Caucasian officers more favorably, since, even assuming Ortiz is Caucasian, Ramsey

was not involved in Ortiz's discipline.  Second, this proposed evidence is not relevant to

plaintiff's claim that the City of Philadelphia has a custom of using different disciplinary

processes based on race, because both plaintiff and Ortiz went through the same PBI hearing

process and both final decisionmakers followed the PBI Board's recommendations.

---

[11] No explanation is given by either party for the six-year delay in conducting this PBI hearing.

The Court thus concludes that Ortiz was not similarly situated to plaintiff with respect to the investigation following the arrest of James Singleton.

*ii.    Arrest of Wurlin Graham*

Regarding the arrest of Wurlin Graham, plaintiff seeks to relitigate the validity of the misconduct charges leading to his dismissal. He argues that Ortiz lied during the investigation into Graham's complaint and during the subsequent PBI hearing regarding plaintiff's misconduct. Pl. Resp. 10–13.

After the Wurlin Graham arrest, plaintiff was charged with four violations. In contrast, Ortiz was not charged with any misconduct. Defendants emphasize that there is no evidence that Ortiz committed any misconduct in connection with the Graham arrest. Def. Mot. Lim. 10. The Court is not well-positioned to evaluate the internal investigation that led to plaintiff being charged while Ortiz was not, and there is no evidence, aside from plaintiff's bald assertions, that the investigation itself was flawed. Furthermore, plaintiff does not claim that the Internal Affairs Investigation was discriminatory or violated plaintiff's rights in charging him as opposed to charging his partner, Ortiz. The Court concludes that Ortiz was not "similarly situated" to plaintiff in the investigation following the arrest of Wurlin Graham.

In sum, evidence of Angel Ortiz's alleged misconduct is irrelevant to plaintiff's claims. To the extent that such evidence has any relevance, its probative value is substantially outweighed by a danger of confusing the issues or misleading the jury under Rule 403. Therefore, the Court grants that part of defendants' motion seeking to exclude all comparator evidence of Angel Ortiz.

**B. Defendants' Motion to Exclude Testimony of Certain Witnesses**

Defendants' second pending motion asks the Court to exclude the testimony of twelve witnesses identified by plaintiff in his December 26, 2018, Pretrial Conference Memorandum (Document No. 135).  Def. Mot. Limine Witnesses 3.[12]  Plaintiff responded in opposition to defendants' motion on January 14, 2019 (Document No. 137).  Defendants filed a reply in support of their motion on January 18, 2019 (Document No. 141) and plaintiff submitted a sur-reply on January 23, 2019 (Document No. 142).  Over the course of these submissions the parties reached agreement as to a number of the witnesses.[13]  However, the testimony of the following eight witnesses is in dispute: Angel Ortiz, John Hargraves, Michael Vargas, John Snyder, Milord Celce, Christopher Flacco, Richard Ross, and Raymond Evers.

Plaintiff argues that he "has the right to dispute and impeach all evidence related to his termination including the ability to examine his accusers and city witnesses that offered statements or in any way contributed to his termination."  Pl. Resp. Mot. Lim. Witnesses 3. Plaintiff is incorrect.  Although plaintiff has the right to present relevant evidence, that evidence must be relevant to plaintiff's pending claims.  Plaintiff's only remaining claims are (1) that Commissioner Ramsey, acting under the color of state law, intentionally discriminated against plaintiff by disciplining him more harshly than other similarly situated Caucasian officers, and (2) that the City has a custom of subjecting African American officers to different disciplinary proceedings than Caucasian officers and that those proceedings result in more severe punishment.

---

[12] Plaintiff was given leave to file this belated Pretrial Conference Memorandum identifying proposed witnesses after the December 20, 2018, Final Pretrial Conference.  At that conference plaintiff stated that his previous attorney failed to identify a number of essential witnesses before withdrawing as counsel.

[13] Specifically, plaintiff agrees to exclude the following witnesses: Timothy J. Brown, Marc Gelman, Dietra Cuffie, Charles McKnight, and Christine McShea, and defendants do not object to the following witnesses: Captain Michael Craighead or Commissioner Charles Ramsey.  Based on the parties' agreements, the Court does not address the admissibility of the testimony of these individuals.

Evidence is relevant if "it has any tendency to make a fact [of consequence in determining the action] more or less probable than it would be without the evidence." Fed. R. Evid. 401. Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The Court addresses each disputed witness below.

### 1. Angel Ortiz

The first proposed witness whose testimony is disputed is Angel Ortiz. Earlier in this Memorandum the Court concluded that Ortiz is not an appropriate comparator. The Court now must evaluate the admissibility of Ortiz's proffered testimony.

Ortiz is a police officer with Philadelphia Police Department and was plaintiff's partner at the time of the Wurlin Graham arrest, the arrest which led to plaintiff's termination. Plaintiff states that, as a witness, Ortiz "[w]ill testify regarding his involvement in the Wurlin Graham arrest and his internal Affairs interviews, and also regarding his statements given at Plaintiff's PBI hearing, Arbitration hearing, and to the media." Pl. Resp. Mot. Lim. Witnesses 4. Defendants argue that none of the Ortiz testimony summarized by plaintiff is relevant to plaintiff's remaining claims because "[p]laintiff has not alleged, nor could he, that Ortiz was involved in the decision to terminate [p]laintiff or that he played any part in the alleged decision to treat Caucasian officers differently than African American officers." Def. Reply Mot. Lim. Witnesses 5.

Although Ortiz was involved in the circumstances surrounding plaintiff's termination, that does not make his testimony relevant at trial. Testimony is only relevant at trial if "it has any tendency to make a fact [of consequence in determining the action] more or less probable

than it would be without the evidence." Fed. R. Evid. 401. Plaintiff cannot use the trial as an opportunity to relitigate his termination or probe whether Ortiz should have also been punished for his conduct during the Graham arrest.[14] Instead plaintiff must produce evidence that has a tendency to establish a fact that is material to his claims of race discrimination. He has failed to do so. Plaintiff's offer of proof with respect to Ortiz says nothing about Ramsey's decision to terminate plaintiff, and plaintiff provides no argument that Ortiz has any information about the alleged custom of utilizing different disciplinary proceedings based on race.

In short, the Ortiz testimony is irrelevant to plaintiff's remaining claims and is therefore inadmissible evidence under Rule 401. The Court thus grants that part of defendants' motion seeking to exclude the testimony of Angel Ortiz.

### 2. Michael Vargas and Milord Celce

Plaintiff states that Vargas "will testify regarding [p]laintiff's practices and training in the handling of evidence as a member of the ACE group in five squad which was the pilot program in the 22nd District that conducted drug interdiction on car stops." Pl. Resp. Mot. Limine Witnesses 7. Similarly, plaintiff states that Celce will testify regarding plaintiff's "practices when handling evidence such as money, guns, drugs, and vehicle seizures as his partner in the 22nd District." *Id.*

Defendants argue that plaintiff seeks to introduce testimony of Celce and Vargas to testify to plaintiff's practices in previous police stops to show that plaintiff acted in accordance with that character in the Wurlin Graham stop. They assert that this is inadmissible character evidence under Federal Rule of Evidence 404(a)(1).

Rule 404(a)(1) states, "Evidence of a person's character or character trait is not

---

[14] Similarly, plaintiff cannot introduce evidence that is solely relevant to his Whistleblower claim as to which Defendants' Motion for Summary Judgment was granted.

admissible to prove that on a particular occasion the person acted in accordance with the character or trait." In this case, plaintiff wants to introduce Vargas's and Celce's testimony to show that he handled evidence appropriately when he worked as a member of the "ACE group in five squad" with Vargas and when he worked as Celce's partner, and as a result, that he was more likely to have handled evidence appropriately during the Wurlin Graham arrest. However, testimony that plaintiff had previously handled evidence appropriately or had a reputation for doing so is not admissible to show that plaintiff handled evidence appropriately during the arrest which led to his termination. Therefore, to the extent that plaintiff seeks to introduce evidence of his character or reputation for handling evidence appropriately, such evidence is inadmissible under Rule 404(a)(1).

In contrast to the limitation on character evidence, the Federal Rules of Evidence allow evidence of habit or routine practice in certain circumstances. "Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice." Fed. R. Evid. 406. The Third Circuit has explained the difference between character and habit evidence as follows:

> Character and habit are close akin. Character is a generalized description of one's disposition, or of one's disposition in respect to a general trait, such as honesty, temperance, or peacefulness. Habit, in modern usage, both lay and psychological, is more specific. It describes one's regular response to a repeated specific situation . . . . A habit [ ] . . . [ ] is the person's regular practice of meeting a particular kind of situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time, or of giving the hand-signal for a left turn, or of alighting from railway cars while they are moving. The doing of the habitual acts may become semi-automatic.

*Becker v. ARCO Chem. Co.*, 207 F.3d 176, 204 (3d Cir. 2000) (quoting the Advisory Committee Notes to the Federal Rules of Evidence). Plaintiff's summary of Vargas's and Celce's expected testimony does not provide enough detail for the Court to ascertain whether plaintiff is asserting

that the testimony regarding "practices" is actually habit evidence as opposed to character evidence. However, the Court need not reach that conclusion. Assuming arguendo that plaintiff is attempting to introduce habit evidence, and that plaintiff's evidence handling practices could constitute a habit or routine practice under Rule 406, such evidence is still inadmissible because it is irrelevant to plaintiff's remaining claims.

As discussed *supra*, plaintiff cannot use this trial as an opportunity to relitigate his termination. Instead plaintiff must produce evidence that has a tendency to establish a fact material to his remaining claims of race discrimination. *See* Fed. R. Evid. 401. Evidence that plaintiff had a habit of handling evidence appropriately would not make it more or less likely that Ramsey terminated plaintiff because of his race. Critically, an investigation, a PBI hearing, and a subsequent arbitration hearing all found that the evidence established plaintiff had violated four departmental policies. Plaintiff's proposed habit evidence might be relevant to a relitigation of his underlying departmental violations, but it does not tend to show that Ramsey, who followed the recommendation of the of the PBI Board was motivated to terminate plaintiff because of his race. Similarly, evidence that plaintiff had a habit of handling evidence appropriately does not make it more or less likely that the City has a custom of using different disciplinary procedures based on race.

The Court concludes that Vargas's and Celce's proposed testimony is irrelevant to plaintiff's remaining claims and is therefore inadmissible evidence under Fed. R. Evid. 401. For the foregoing reasons the Court grants that part of defendants' motion seeking to exclude the testimony of Michael Vargas and Milord Celce.

### 3.  John Snyder

Regarding John Snyder, plaintiff states that Snyder "will testify regarding his involvement in the Wurlin Graham arrest and to his Internal Affairs statements interview taken by IAB Investigator Michael Craighead."  Pl. Resp. Mot. Limine Witnesses 5.  Plaintiff also states that Snyder was a witness at plaintiff's PBI hearing.  *Id.*

Defendants argue that Snyder's testimony and statements related to the Wurlin Graham arrest are irrelevant because they do not relate to either of his current claims – namely that he was discriminated against by Ramsey, or that there was a custom of using different disciplinary procedures, that resulted in less favorable outcomes, for African American officers.

Although Snyder was involved in the investigation and PBI hearing leading to plaintiff's termination, that does not make his testimony relevant at trial of this case.  In this case plaintiff must produce evidence that has a tendency to show a fact that is material to his claims of race discrimination.  He has failed to do so with respect to the proposed Snyder evidence.  Plaintiff's offer of proof does not show that Snyder was involved in Ramsey's decision to terminate plaintiff and provides no reason to believe that Snyder has any information about the alleged custom of applying different disciplinary proceedings based on race.

Thus, the Court concludes that Snyder's proposed testimony would be irrelevant to plaintiff's remaining claims and is therefore inadmissible evidence under Rule 401.  For the foregoing reasons the Court grants that part of defendants' motion seeking to exclude the testimony of John Snyder.

### 4.  Christopher Flacco

Christopher Flacco worked as Chief Inspector in the Philadelphia Police Department at the time of the Wurlin Graham arrest and subsequent investigation into plaintiff's conduct.

Plaintiff states that Christopher Flacco will testify "regarding IAB investigators training, and his involvement in the Wurlin Graham investigation, and what paperwork he signed off on as supervisor of Investigator Craighead which led to the discipline actions imposed on Plaintiff to be terminated." Pl. Sur-Reply Mot. Limine Witnesses 5.

Defendants argue that "the training of IAB investigators has no relevance to the present lawsuit alleging racial animus by Commissioner Ramsey, nor does it have any relevance to the claim that officers were subjected to different disciplinary proceedings by race." Def. Reply Mot. Limine Witnesses 9. Although Flacco approved the completed investigation of Investigator Craighead, defendants argue that there is no evidence that Flacco had any role in conducting the investigation, determining which charges to bring against plaintiff, or the decision to terminate plaintiff. *Id.*

The Court agrees with defendants with respect to Flacco. Flacco's proffered testimony, as described by plaintiff, is not relevant to either of plaintiff's remaining claims. Furthermore, Craighead, the individual who conducted the investigation into plaintiff's misconduct, is expected to testify regarding his investigation. *Id.* Therefore, to the extent that Flacco's testimony regarding Craighead's investigation is at all relevant, it would be needlessly cumulative under Rule 403.

The Court concludes that Flacco's testimony is not relevant to plaintiff's claims under Rule 401. To the extent that Flacco's testimony is relevant, any limited probative value is substantially outweighed by a danger of "needlessly presenting cumulative evidence" under Rule 403. For those reasons the Court grants that part of defendants' motion seeking to exclude the testimony of Christopher Flacco.

5.  Raymond Evers

Raymond Evers is currently an Inspector in the Philadelphia Police Department assigned to the Narcotics Unit.  Def. Reply Mot. Limine Witnesses 11.  Instead of identifying Raymond Evers as a proposed witness in plaintiff's December 26, 2018 Pretrial Conference Memorandum, plaintiff first identified Evers as a proposed witness in his Response to Defendants' Motion in Limine to Exclude Testimony of Certain Witnesses filed on January 14, 2019.  Defendants first argue that the Court should exclude the proposed testimony of Evers on this basis alone.  Although the Court agrees that plaintiff cannot continue to belatedly identify proposed witnesses and comparators, given plaintiff's *pro se* status, the Court will evaluate the admissibility of the proposed testimony.

Plaintiff states that Evers will testify "regarding the Philadelphia Police Department adopted narcotics practice policies and culture of altering and destroying evidence."[15] Defendants argue that Evers played "absolutely no role" in the Wurlin Graham arrest, investigation, or any employment decision regarding Plaintiff.  Def. Reply Mot. Limine Witnesses 11.

Plaintiff cannot introduce witness testimony solely to demonstrate that the Philadelphia Police Department had "practice [sic] policies and culture" of destroying evidence, because such testimony is irrelevant to plaintiff's remaining claims.  Although plaintiff might believe that such

---

[15] Plaintiff also asserts that Evers is an appropriate comparator because "he is a white male that was found guilty of similar action as Plaintiff and was not fired."  Pl. Sur-Reply Mot. Limine Witnesses 5.  Plaintiff first suggested that Evers might serve as a comparator in his sur-reply to Defendants' Motion in Limine to Exclude Testimony of Certain Witnesses.  Based on the information provided by the parties, Evers is not an appropriate comparator. According to an exhibit attached to plaintiff's Sur-Reply, Evers was an investigator who instructed personnel "not to arrest those with small amounts of narcotics, a . . . instead . . . force these persons to become 'informal informants.'"  Pl. Sur-Reply Mot. Limine Witnesses Exhibit 1.  Although Evers and plaintiff need not be identical, their conduct must be "similar in all relevant respects" for Evers to be a valid comparator.  *Opsatnik*, 335 F. App'x at 222–23.  Plaintiff's misconduct underlying his departmental violations differ substantially from Evers misconduct.  As a result, Evers is not an appropriate comparator.

evidence would justify his conduct to a jury, evidence of such practices would not make it more or less likely that Ramsey terminated plaintiff because of his race or that there is a custom of using different disciplinary proceedings based on race in the Philadelphia Police Department.

The Court concludes that Evers's testimony is not relevant to plaintiff's claims under Rule 401. For the foregoing reasons, the Court grants that part of defendants' motion seeking to exclude the testimony of Raymond Evers.

### 6. John Hargraves

Hargraves is an African American former police officer who was terminated from his employment after being charged with a crime due to a domestic dispute.[16] Plaintiff states that Hargraves will testify regarding "Commissioner Charles Ramsey['s] wrongful termination practices of African Americans versus white males, false and improper filing of both 'Notice of Intention to Dismiss' & 'Notice of Dismissal' paperwork for violation of Chapter 39 of the Crimes Code (relating to theft and related offenses). Ramsey Lying under oath to Arbitrators about discipline which did not occur or exist." Pl. Resp. Mot. Limine Witnesses 4. Plaintiff also stated that Hargraves would testify to "the admissibility of testimony of co-workers who are of African American race that endured comparable discrimination versus white males." Pl. Sur-Reply Mot. Limine Witnesses 6.

---

[16] Plaintiff also argues that Hargraves is an appropriate comparator. Plaintiff failed to suggest that Hargraves might serve as a comparator at the December 20, 2018 Final Pretrial Conference, and instead first stated that Hargraves could serve as a comparator in his Sur-Reply to Defendants' Motion in Limine to Exclude Testimony of Certain Witnesses. Despite plaintiff's untimely introduction of this proposed comparator evidence, the Court will briefly address this argument. A comparator must be a similarly situated individual who does not share the plaintiff's protected characteristic and was treated differently than the plaintiff in similar circumstances. Hargraves is an individual of the same race as plaintiff who was treated similarly – terminated – for dissimilar conduct. Therefore, Hargraves is not an appropriate comparator.

As an initial matter, Hargraves cannot testify regarding "the admissibility of testimony." The admissibility of testimony is a question of law. Consequently, such a determination must be made exclusively by the Court.

Next, defendants object to Hargraves's proffered testimony about improper filing of dismissal paperwork for violation of Chapter 39 of the [Pennsylvania] Crimes Code. They argue that such testimony is irrelevant to plaintiff's claims. Def. Reply Mot. Limine Witnesses 7. The Court agrees. Plaintiff's remaining claims have nothing to do with the improper filing of dismissal paperwork. There is no allegation in this case that plaintiff's dismissal paperwork was improper. Instead plaintiff claims that he was terminated based on his race. As a result, the Court excludes Hargraves's proposed testimony regarding the improper filing of dismissal paperwork as irrelevant under Rule 401.

Defendants also object to Hargraves's proffered testimony to the extent that "Hargraves will testify that Ramsey lied under oath about previous discipline." Def. Reply Mot. Limine Witnesses 7. Defendants argue that "even if it were credible, this would be improper testimony under Rule 608(b), as extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." *Id.* The Court agrees. To the extent that plaintiff seeks to introduce testimony that Ramsey engaged in specific instances of lying under oath, that testimony constitutes extrinsic evidence and is inadmissible to attack Ramsey's credibility under Rule 608(b).

Finally, in response to plaintiff's offer of proof that Hargraves will testify to "Commissioner Charles Ramsey['s] wrongful termination practices of African Americans versus white males" defendants argue that plaintiff has not sufficiently "identified the relevant admissible testimony that Hargraves is expected to provide." *Id.* at 6. They state that plaintiff

has not alleged that Hargraves was involved in the events leading to plaintiff's termination, or the decision to terminate plaintiff, and argue that they cannot adequately respond to this offer of proof or prepare for trial based on plaintiff's "conclusory statement." *Id.* Defendants, however, do not cite to any support for their argument that Hargraves's testimony should be excluded for an insufficient offer of proof and, given plaintiff's *pro se* status, the Court will not exclude Hargraves's proposed testimony on this basis alone. If Hargraves is able to testify regarding Ramsey's decision to terminate plaintiff or a City custom of applying different disciplinary proceedings based on race, then such testimony would be relevant. Based on the present record, the Court cannot determine whether Hargraves's proffered testimony regarding "wrongful termination practices" is admissible.

Therefore, given the dearth of evidence, the Court defers ruling on that part of defendants' motion seeking to exclude Hargraves's testimony as it relates to "wrongful termination practices." The Court grants that part of defendants' motion seeking to exclude Hargraves's testimony regarding the admissibility of testimony of coworkers, the improper filing of dismissal paperwork, and specific instances of Commissioner Ramsey lying under oath.

7. Commissioner Richard Ross

Commissioner Richard Ross is the current Commissioner of the Philadelphia Police Department and was the First Deputy to Commissioner Charles Ramsey at the time of plaintiff's termination. Plaintiff states that Commissioner Ross will testify regarding "his involvement in the Wurlin Graham arrest case, and regarding his role as first Deputy to Commissioner Charles Ramsey involving Police department practices, and double standers [sic] of African Americans being treated more harshly in discipline than white males." Pl. Resp. Mot. Limine Witnesses 5.

Defendant attempts to argue that Commissioner Ross's testimony would not be relevant

because his "role was limited to signing off on the paperwork prior to Commissioner Ramsey making the determination about whether plaintiff deserved punishment. . . ." Def. Reply Mot. Limine Witnesses 10. They add that "his signature represented a recommendation, which could have been ignored by Commissioner Ramsey." *Id.* Additionally, defendants state that this testimony will be duplicative of Ramsey's testimony. *Id.*

The Court rejects defendants' arguments. Based on the parties' submissions it appears that Commissioner Ross was involved in the decision to terminate plaintiff, at least in a limited manner, and might have relevant information about Ramsey's decision to terminate plaintiff and "department practices" as described by plaintiff. For that reason, the Court will not exclude the testimony of Commissioner Ross to the extent that it is relevant to plaintiff's remaining claims.

For the foregoing reasons the Court denies that part of defendants' motion seeking to exclude the testimony of Commissioner Ross.

## V.     CONCLUSION

For the foregoing reasons, Defendants' Motion in Limine to exclude comparator evidence of John McCloskey, Jeffrey Cujdik, and Angel Ortiz is granted pursuant to Federal Rules of Evidence 401 and 403. Defendants' Motion in Limine To Exclude Testimony of Certain Witnesses is granted in part and denied in part.

The Court grants:

- That part of defendants' motion seeking to exclude the testimony of Angel Ortiz, John Snyder, and Raymond Evers pursuant to Federal Rule of Evidence 401.

- That part of defendants' motion seeking to exclude the testimony of Michael Vargas and Milord Celce pursuant to Federal Rules of Evidence 401 and 404.

- That part of defendants' motion seeking to exclude the testimony of Christopher Flacco pursuant to Federal Rules of Evidence 401 and 403.

- That part of defendants' motion seeking to exclude John Hargraves's testimony regarding the admissibility of testimony of coworkers, the improper filing of dismissal paperwork, and specific instances of Commissioner Ramsey lying under oath pursuant to Federal Rules of Evidence 401 and 608.

The Court defers ruling on:

- That part of defendants' motion seeking to exclude John Hargraves's testimony as it relates to "wrongful termination practices."

The Court denies:

- That part of defendants' motion seeking to exclude the testimony of Commissioner Richard Ross.

The rulings in this Memorandum and attached Order cover only the proffered testimony of witnesses and other evidence which plaintiff argued should be admitted in his case-in-chief. The rulings do not cover any appropriate rebuttal testimony or other evidence and are without prejudice to the right of the parties to seek reconsideration at trial if warranted by the evidence and the law as stated in this Memorandum.

An appropriate Order follows.